### BELDEN vs. BELDEN.

Where the children and devisees of a testator executed a written agreement to divide all his property equally, although his will gave to his three sons a valuable lot, and divided the residue of his estate equally between his sons and daughters, and one of the sons at the signing of such agreement execute to the other sons a deed for his share in that lot, with the verbal understanding that it was for the purpose of enabling them to carry out the agreement of equalization, no implied promise arises that these grantees will pay to him the amount specified in the deed as the consideration of the conveyance. The circumstances negative such implication.

Argued upon proofs and the pleadings in the cause.

*Mr. M. P. Grey,* for J. C. Belden.

*Mr. P. L. Voorhees,* for defendant O. S. Belden.

THE CHANCELLOR.

The question arises between the parties to a suit in partition, as to their respective interest in one of the parcels of land sold by virtue of the order for sale. The parties were children of Calvin Belden, of Salem, who died in May, 1864.

Calvin Belden, by his will, devised a store lot in Salem to his three sons—John, David, and Oliver—subject to a mortgage of $1800, and an annuity of $400 to his widow. The residue of his property he divided equally among his three sons and three daughters.

After his death, on the 20th of February, 1867, his children entered into an agreement for doing away the preference given in the will to his sons, and for equalizing the division of his property among his six children. His sons, John and David, who were the acting executors, undertook to carry out the agreement, and Oliver, to enable them to do so, at the time of signing the equalization agreement, executed and

delivered to them a deed for his interest in the store lot. The consideration expressed was $3000.

Oliver claims that this $3000 was to have been paid to him above his equal one-sixth of the property, and this is the only question in the cause.

The value of the store lot was $16,000. The mortgage and interest were $2000, and the value of the annuity was about $2000, leaving the net value of the store lot $12,000, or $2000 to each child. If the claim of Oliver is allowed, each child having received besides his or her equal share of the rest of the testator's estate $2000 of the value of the store lot, David and John each paying $1500 to Oliver, will have only $500 each out of the store lot, and Oliver will have received $5000 out of it, the daughters receiving $2000 each. By the will each son would have received $4000. The values here assumed are about the true values, but if different values are assumed the result will be proportionally about the same; a result widely different from the equalization of division which was the object of the agreement. It is important to keep this result in view in construing the agreements and releases in this case, which are not drawn with much skill, and may on their face possibly permit of two constructions.

The agreement of equalization, after stating the preferential devise of the store lot to the three sons, stated that the children of testator " have decided upon dividing the residuary estate of their said parent in a different manner than that as set forth in the said will, intending thereby to equalize their respective shares of said estate as nearly as practicable ;" and then provides that the acting executors do state an account of all the debts and liabilities of the deceased, and of the assets, and of the moneys paid out by them, and also of the moneys and assets received and unexpended in their hands, and a valuation of all the real and personal estate unsold, including the store lot, clear of the encumbrances created by the will. If the children approved of such statement and valuation the acting executors, John and David, were to take the property

at that valuation, and to assume and discharge all the debts and liabilities of the deceased; and the residue of the estate, after the discharge of all claims, was to be divided into six equal shares, each child to have one share. And each of the parties agreed to sign and execute all necessary instruments, in writing, *conveyances* and transfers, to facilitate and complete without delay that agreement.

The only conveyance necessary to enable the executors to carry out that agreement, was a deed from Oliver to them of his one-third of the store lot. That deed was executed and delivered at the same time with this agreement, and the two instruments must therefore be considered and construed as part of the same transaction; and both must be considered as part of the equalization of the distribution of the estate of the testator among his six children. The agreement clearly states that such was its object, and this is shown by the parol testimony. The operative words of the agreement in conformity with the recited object, expressly provide that the whole residue, after the payment of debts and liabilities, shall be equally divided among the six children. This is entirely inconsistent with a preference of $3000 to Oliver out of the shares of his two brothers, and with the very unequal and unjust result that would follow.

The criticism on the words in the recital, that it was "the residuary estate" that was to be divided differently, amounts to nothing. The words may refer to the residue after special legacies and devises are taken out, as it is used in the will, or the residue after payment of debts and expenses, as it is used in the operative part of this agreement. It is not used in the first meaning, because this very sentence says that the object is to provide for its distribution in a different manner from that set forth in the will, by equalizing the shares. As the will equalized the shares in the residue over special gifts, the only meaning that can be given here is the residue after debts and expenses. The provision that the title to the store lot should not be affected by the agreement is clearly unnecessary, but can have no effect upon the agreement.

There can be no doubt as to the effect and construction of these two instruments—the deed and the agreement. But Oliver contends that there was an agreement by David and John to pay him $3000 for this conveyance, and that he will be allowed to prove this and the fact that it is unpaid, notwithstanding the receipt on the deed; and that as unpaid purchase money it was a lien upon the premises and upon the proceeds of the sale now in this court.

A vendor will be allowed to prove the purchase money unpaid, notwithstanding the receipt on the deed, and has a lien upon the premises sold for unpaid purchase money, which would follow the proceeds when paid into court. But such receipt must be contradicted by proof that is clear and convincing. In this case the only proof is that of Oliver S. Belden himself. He is contradicted by his brother John, who has survived David. It is not claimed by John that the money was paid, but that the deed was delivered to carry out the agreement into which Oliver entered with the others and afterwards confirmed by receiving his share. The recital of a consideration in a deed is no proof that that was agreed to be paid. And the mere proof that no money was paid at the delivery of such deed would not sustain an action for the consideration recited. Oliver's own testimony, and the fact that he accepted at the time the same sum as was paid to his sisters in a bond given to him by David and John, affords a strong presumption that this $3000 was not to be paid in addition to that, as it would then have naturally been included in that bond.

Besides John Belden, three other witnesses present at the execution of the deed, state positively that it was given for the purpose of carrying out the agreement of equalization.

One witness, especially when he is the party in interest, cannot be allowed to overcome the recitals in two instruments executed by himself under seal, when contradicted by so many others. The other facts and circumstances in the case, the submission and award, and the two releases executed by

Oliver, confirm strongly, if not conclusively, this view of the case, and need not be further considered.

The claim of Oliver S. Belden must be overruled and disallowed, with the costs occasioned by it.